FILED
2013 Jun-28  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | | |
|---|---|---|
| **LORETTA CURLEE, KIMBERLY A. BROWN, CAROLYN DAVIS, and CAROLINE D. WYATT** | ] ] ] ] | |
| **Plaintiffs,** | ] ] | |
| | ] | **CV-11-BE-04052-S** |
| **v.** | ] ] | |
| **BIRMINGHAM BOARD OF EDUCATION,** | ] ] ] | |
| **Defendant** | ] ] ] ] | |

## MEMORANDUM OPINION

This matter comes before the court on Defendant Birmingham Board of Education's Motion for Summary Judgment. (Doc. 14).  Plaintiffs Loretta Curlee, Kimberly A. Brown, Carolyn Davis, and Caroline D. Wyatt, four African American payroll clerks employed by the Board, allege that the Board discriminated against them because of their race by paying them a lower salary than a similarly situated Caucasian payroll clerk.  The Board argues that the Plaintiffs have failed to establish a *prima facie* case of discriminatory compensation or a cognizable § 1981 claim via § 1983, and thus, the court should grant summary judgment in its favor. Because the court finds that no genuine issue of material fact exists and because the Plaintiffs failed to make a *prima facie* showing of discriminatory compensation, the court will GRANT the Board's motion for summary judgment and DISMISS the case WITH PREJUDICE.

I.      STATEMENT OF FACTS

      A.      Factual Background

            1.      Individual Plaintiffs

The Board currently employs all four of the Plaintiffs as payroll clerks. The Board hired

Plaintiff Loretta Curlee as a secretary in September of 1998. Ms. Curlee has an Associate in

Applied Science degree from Booker T. Washington Junior College. Prior to her employment

with the Board, Ms.Curlee worked in the private sector as a typist, personnel clerk, and secretary.

In August 2004, the Board promoted Ms. Curlee to payroll clerk, and at the time of her

promotion, Mrs. Curlee did not have any questions or complaints about her placement on the

Board's salary schedule.

The Board hired Plaintiff Caroline D. Wyatt in August 2004 as a payroll clerk. Ms. Wyatt

has a Bachelor of Science from Faulkner University. Prior to her employment with the Board,

Ms. Curlee worked in the private sector as a cashier, office worker, and administrative assistant

with payroll duties and also worked for the U.S. Postal Service as a mail carrier. When she was

hired by the Board, Ms. Wyatt asked Adrian Mitchell, a Board Human Resources supervisor,

whether her past working experience would be considered in her salary. Ms. Wyatt testified that

Mitchell told her the Board did not grant credit for working at a corporation.

The Board hired Plaintiff Kimberly A. Brown in September 1988 as an intermediate

clerk. Ms. Brown has a Bachelor of Science in Business Administration from Auburn University

in Montgomery. Prior to her employment with the Board, Ms. Brown worked as a customer

service representative and an office manager in the private sector. In August 1997, Ms. Brown

took a two year leave of absence and during that time worked for Cornerstone Schools as an

office manager and for Our Lady of Fatima Catholic School as a kindergarten teacher. Ms.

Brown disputes that she was paid for her work as a teacher at Our Lady of Fatima. Ms. Brown

returned to the Board as an intermediate clerk in August 1999, and was promoted to senior

secretary in April 2000. In August 2003, Ms. Brown requested and was granted a transfer to a

payroll clerk position and testified that she was happy with her compensation at the time of

transfer.

The Board hired Plaintiff Carolyn Davis in June 1988 as a clerk/ typist. Ms. Davis has an

Associate of Arts degree from Jefferson State Community College. Prior to her employment with

the Board, Ms. Davis worked as a desk clerk, secretary, and an office worker with payroll duties

in the private sector. Ms. Davis worked for the Board as an intermediate clerk and a senior clerk

before becoming a payroll clerk in January 2003. Ms. Davis did not have any questions or

concerns about her salary when she assumed the position of payroll clerk.

2.    The Board's Salary Schedule

The Board compensates the Plaintiffs, and all of its employees, in accordance with a

Board approved salary schedule. The salary schedule governs all Board employees and sets forth

the salary ranges for each job position, which are reflected as "steps" on the salary schedule.

("Salary Schedule," Doc. 16-7, at 5, *et seq.*). The Board has separate salary schedules for

"certified" versus "classified" employees. Certified employees are those employees that are

required to have a certificate issued by the Alabama State Department of Education, and all other

employees, including the Plaintiffs, are classified employees.

The Board alleges that placement on the salary schedule is determined by various factors,

"including, but not limited to, prior experience working for a public education institution." (Doc.

3

15, at 3).  The individual Plaintiffs themselves are at different steps on the salary schedule

because they all have different years of working experience at the Board.

Craig Witherspoon, Superintendent of the Board, testified that "Placement on the salary

schedule is determined by various factors including, but not limited to, prior experience working

for a public education institution. It is the Board's policy and practice to grant classified

personnel experience credit for previously working for a public education institution." (Doc. 16-

7, at 2). The Board's Chief Financial Officer Arthur Watts, Jr. also testified that, "[I]t has been

the Board's practice to recognize the years of experience of a classified employee whom had

worked in a public education entity." (Doc. 16-5, at 6). Mr. Watts admitted in his deposition that

the salary schedule itself does not specifically state that a classified employee would receive

credit for past experience in public education. *Id.* at 5.

The Plaintiffs dispute that classified employees, like themselves, receive credit for

experience in public education. Neither the 2007 nor the 2009 salary schedule explicitly states

that classified employees will be given credit for prior public education experience, but they do

state that *certified* employees will be given credit for working in public education. (Doc. 16-7, at

813, 849). The Plaintiffs argue that this omission establishes that the Board's policy is to not give

classified employees credit for past public education experience.

Superintendent Witherspoon testified that "[t]he Board does not give experience credit

for performing similar job duties while working in the private sector for purposes of placement

on the appropriate step of the Board's salary schedule," but that the Board does give experience

credit for "employment with the University of Alabama at Birmingham ('UAB') as prior

experience in public education." (Doc. 16-7, at 3). Mr. Watts testified that experience in a public

4

education entity affects the salary of both certified and classified employees but that classified employees' salary is not affected by the amount of education they have attained. (Doc. 16-5, at 5).

The Plaintiffs dispute that the Board does not give credit for education attained or past experience in the private sector by pointing to the job posting for a Board payroll clerk. The job posting lists the salary as a range from $28,788.50 to $38,890.30 with the caveat that "Actual salary will be determined upon verification of experience & education." ("Notice of Vacancy," Doc. 16-1, at 44). The Plaintiffs contend that because the job posting does not distinguish between public education experience and payroll experience earned in the private sector that it should be interpreted as including both kinds of prior experience.  The Plaintiffs also contend that because the job posting specifically says salary will be determined "upon verification of . . . education" it should be interpreted as giving credit for any education attained by the classified employee.

The parties do not dispute that several classified employees, both Caucasian and African American, have received credit for salary schedule purposes for prior employment at UAB, and specifically that Coretta Butler Densmore, Darlene Bufford, Veverly Locke, Ritter Posey, and Griselda McCoy, all African American Board employees, received such credit for past employment at UAB.[1]

------

[1] The Plaintiffs point out that "it appears [the African American employees who did receive credit for past public education experience] did not receive credit for this experience until **after** Plaintiffs filed their Complaint in federal court on November 30, 2011 . . . because Defendant did not mention this fact in its letter to Plaintiff's counsel on August 10, 2010 or in its Position Statement it submitted on March 4, 2011 to the EEOC during its investigation." (Doc. 22, at 4)(emphasis in original). While the Plaintiff is correct that the letter and position statement do not contain this information, the lack of such information does not mean that the African

### 3.    Alleged Comparator

The parties do not dispute that Melinda Nix, a Caucasian Board payroll clerk, received credit for her prior working experience at UAB as a records management specialist for purposes of the salary schedule. Ms. Nix has a high school degree and worked at UAB as a medical records clerk from 1988 to 1994. Ms. Nix began working for the Board in August 1994 and was promoted to payroll clerk in December 2002. After writing letters for several years about her salary, Ms. Nix filed a charge of discrimination against the Board alleging race and gender discrimination because other employees had received credit for prior experience at UAB and she had not. As a result of settlement of the charge of discrimination, in 2009 the Board paid Ms. Nix back pay and gave her credit for her UAB experience by placing her on a higher step in the salary schedule.

### 4.    Alleged Disparate Compensation

In October 2007, Plaintiffs Ms. Curlee and Ms. Wyatt wrote a letter to Mr. Watts requesting a review of their salary placement. Mr. Watts told Ms. Curlee that the Board did not give credit for experience that was not in public education. On November 27, 2007 for unexplained reasons, Ms. Curlee withdrew her request for review. The Plaintiffs contend that at a meeting with all of the payroll clerks, Mr. Watts and other Board supervisors told the payroll clerks that Ms. Nix's placement on the salary schedule was changed by the Board because of a "legal situation" and because of her previous experience working in public education at UAB.

---

American employees were not previously given credit for their past public education experience. The absence of such information to the contrary does not mean the Plaintiffs' assumption is fact. Additionally, the information is irrelevant to the current action because the Plaintiffs in this case indisputably do not have past *public* education experience.

6

(Doc. 16-5, at 37). In her deposition, Ms. Curlee testified that she knew of several African American payroll clerks who received credit for prior work experience in public education and at UAB. (Doc. 16-1, at 21).

In February 2009, Ms. Wyatt again inquired about her placement on the salary schedule in light of Ms. Nix's increase, and she was told that Ms. Nix's salary increased because of her prior work experience at UAB. In her deposition, Ms. Wyatt testified that she knew of several African American payroll clerks who received credit for prior work experience in public education and at UAB. (Doc. 16-4, at 17).

Ms. Brown and Ms. Davis both testified that they became unhappy with their salaries when they found out that Ms. Nix was doing the same job but getting paid more than they were. Both Ms. Brown and Ms. Davis testified that to their knowledge no Board employee had ever received credit for prior work experience for a similar job function that was not in public education. (Doc. 16-2, at 18; Doc. 16-3, at 14).

B.    Procedural Background

All four individual Plaintiffs filed EEOC Charges of Discrimination alleging race discrimination on January 4, 2011, and the EEOC issued notice of right to sue letters to all of the Plaintiffs on September 1, 2011. The Plaintiffs then filed a two count Complaint in this court on November 30, 2011. Count I alleges disparate treatment for race under Title VII of the Civil Rights Act of 1984, 42 U.S.C. § 2000e, *et seq*. and Count II alleges race discrimination "in violation of § 1981, via 42 U.S.C. § 1983." (Doc. 1, at 9).    After discovery, the Board filed a motion for summary judgment, the Plaintiffs filed a response, and the Board filed a reply. The court now considers the motion.

II.    STANDARD OF REVIEW

 Summary judgment allows a trial court to decide cases when no genuine issues of

material fact are present and the moving party is entitled to judgment as a matter of law.  *See*

Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must

determine two things: (1) whether any genuine issues of material fact exist; and if not, (2)

whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering

evidence showing no dispute of material fact or by showing that the non-moving party's evidence

fails to prove an essential element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322–23.  Rule 56, however, does not require "that the moving party support

its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.*

Once the moving party meets its burden of showing the district court that no genuine

issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that

there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats &*

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not

significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).   In responding to a motion for summary

judgment, the non-moving party "must do more than simply show that there is some

8

metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e) ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  "Even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)  (citing *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir.

2006)).  The court should not disregard self-serving statements made in sworn testimony simply because they are self-serving at the summary judgment stage, and if the self-serving statements create a genuine issue of material fact, the court should deny summary judgment on that basis. *Id.* at 1253.

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  *Graham*, 193 F.3d at 1282.  The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.*  The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor."  *Anderson*, 477 U.S. at 255.  After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

III.   LEGAL DISCUSSION

The Plaintiffs allege in Count I that the Board engaged in unlawful race discrimination under Title VII of the Civil Rights Act of 1984, 42 U.S.C. § 2000e, *et seq.* and allege in Count II that the Board engaged in intentional and willful race discrimination in violation of 42 U.S.C. § 1981 via 42 U.S.C. § 1983. The court will analyze both Counts simultaneously because "[w]here, as here, plaintiff[s] predicate liability under Title VII on disparate treatment and also claim liability under sections 1981 and 1983, the legal elements of the claims are identical . . . [and] we need not discuss plaintiffs['] Title VII claims separately from [their] section 1981 and section 1983 claims." *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985).

One way to establish a claim of race discrimination is through direct evidence.  *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997).  If the Plaintiffs cannot

prove discrimination by direct evidence, as in this case, the Plaintiffs must establish a *prima facie* case through the burden shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Nevertheless, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated . . . remains with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251-52 (1981).

To establish a *prima facie* case of intentional discriminatory compensation, the Plaintiffs must establish that:  (1) they belong to a protected class; (2) they received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) they were qualified to receive the higher wage. *Lee v. Mid–State Land & Timber Co.*, 285 F. App'x 601, 606 (11th Cir. 2008) (citing *Cooper v. S. Co.*, 390 F.3d 695, 734–35 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc*., 546 U.S. 454 (2006)).

The parties do not dispute that all four Plaintiffs are African American and, therefore, members of a protected class and that they all received a lower salary than Melinda Nix, a Caucasian with the same position. The Board argues that the Plaintiffs cannot establish they were qualified to receive a higher wage because the Plaintiffs are compensated in accordance with the salary schedule. The Plaintiffs argue that the Board's argument is flawed because it is based on the "alleged practice of giving credit to classified employees who have prior education experience." (Doc. 22, at 12).

The court finds that what the Plaintiffs consider only an "alleged" practice is in fact a practice of the Board, even if it is not specifically published in the salary schedule. Superintendent Witherspoon and Mr. Watts testified that both certified and classified employees with past experience at public education institutions, including UAB, received credit for that

11

work in moving up the salary schedule. The Plaintiffs did not testify that they did not know of anyone who had past public education experience who did not receive credit, and, in fact, Ms. Curlee and Ms. Wyatt specifically testified that they knew of African Americans who had received credit for past public education experience. The Plaintiffs cannot simply point to the absence of a specific written policy stating that classified employees are given credit for past public education experience as evidence that such a policy does not exist. The testimony of Superintendent Witherspoon, Mr. Watts, and indeed the Plaintiffs themselves shows that such a policy exists and is uniformly applied to classified and certified employees of all races, including Ms. Nix, Coretta Butler Densmore, Darlene Bufford, Veverly Locke, Ritter Posey, and Griselda McCoy.

The Plaintiffs' argument that they should receive credit for past payroll-related work experience or education also fails. Ms. Brown and Ms. Davis specifically testified that they knew of no Board employees that received credit for past relevant work experience in the private sector.  Merely pointing to the job posting for a new payroll clerk that notes past experience and education will be taken into account in determining a salary is not enough to show that the Board *should* take into account past work in the private sector or education above and beyond that which is required. Simply because the Plaintiffs do not like the Board's policy of not considering such factors does not mean that the policy is unfair and it certainly does not show that it is discriminatory. "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions,'"and the court will not make such a  judgment in this case about whether the Board's policy is wise. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11 Cir. 1991) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988)). It is

enough that the policy is not outwardly discriminatory and does not have a discriminatory effect.

While the Board does not specifically argue that Ms. Nix is not a valid comparator in this case, the court simply notes that the Plaintiffs argument fails on this prong also. Ms. Nix does have past experience working at a public education institution, UAB. The Plaintiffs do not dispute such experience nor do they do dispute that none of them have any past experience working in a public education institution. This difference is fatal to the Plaintiff's case; without a similarly situated Caucasian employee who is paid more than the Plaintiffs, their case must certainly fail. Because the Plaintiffs have failed to show a *prima facie* case of discriminatory compensation, the court need not address whether the Board's legitimate reasons for its policy decision are pretext for discrimination under the *McDonnell Douglas* burden-shifting framework.

IV.    CONCLUSION

Because no genuine issues of material fact exist and because the Plaintiffs have failed to make a *prima facie* showing of discriminatory compensation under either Count of their Complaint, the court will GRANT the Board's motion for summary judgment and DISMISS the case WITH PREJUDICE.

DONE and ORDERED this 28th day of June, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE